# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO. CR415-204 |
| ) | |
| TIMECKA GREEN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER

Before the Court is Defendant's Motion for New Trial. (Doc. 114.) For the following reasons, Defendant's motion is **DENIED**.

## BACKGROUND

On October 27, 2015, local police received a report that children in Defendant's home were unresponsive. This was allegedly caused by a cocaine cooking operation on the premises. Law enforcement arrived on scene where they arrested Larron Bruce and seized a scale, cocaine, and a large amount of cash from his person. After procuring a search warrant, law enforcement conducted a search of the home. During this search, law enforcement took pictures of each room in the residence. Cocaine was found on the kitchen counter, in the kitchen cabinet, in the living room, and in Defendant's car. Drug tools and packaging material were also found in the kitchen, living room, a grill outside the home, and a backpack in the back yard. Crack and marijuana was also found inside Defendant's car.

Law enforcement also conducted interviews on the night of the search. Defendant's daughter was present at the house when law enforcement arrived and gave a videotaped interview. She explained that she had seen Mr. Bruce in the home cooking crack on multiple occasions. Although Defendant's daughter acknowledged that Defendant was rarely present when this occurred, she stated that Defendant allowed Mr. Bruce into her home for the purpose of cooking crack.

During the course of the search, law enforcement observed a car drive past Defendant's residence multiple times. Eventually, the car turned into Defendant's residence and Defendant Green exited the vehicle. She told law enforcement that she had left about thirty to forty-five minutes earlier to pick up McDonalds for her children. Defendant Green was then arrested.

Defendant made numerous phone calls from jail after she was arrested and detained. In several of the phone calls she made threatening comments about her daughter. Specifically, Defendant stated that she would cut her daughter's throat if she saw the girl again. The phone calls indicated Defendant's intent to get her daughter to change her story.

Defendant was indicted on December 3, 2015. (Doc. 1.) She was charged with one count of conspiracy to possess with intent to distributed a mixture and substance containing a detectable amount of cocaine and cocaine base and conspiracy to manufacture

2

cocaine base, one count of possession of cocaine with intent to distribute and possession of cocaine base with intent to distribute, and one count of unlawful manufacture of a mixture or substance containing a detectable amount of cocaine base. (Id.) Defendant proceeded to trial on May 23, 2016.

At trial, Defendant's attorney argued that Defendant had no knowledge that Mr. Bruce was using her home to cook crack. He also argued that Defendant had no knowledge of the drugs in general, and no motive or plan to commit any crime. However, the Government presented conflicting evidence.

Defendant's daughter testified at trial. The Government also introduced a videotape containing the daughter's statements on the night of Defendant's arrest. In both of these statements the daughter acknowledged that Defendant was aware of Mr. Bruce's crack-cooking activities. Moreover, Mr. Bruce testified against Defendant, acknowledging that Defendant was aware of his actions. He also stated that Defendant had left her home on the night of her arrest to sell drugs.

In addition to testimony, the Government introduced a series of photographs of the home taken by law enforcement. The photographs included evidence of drugs and drug paraphernalia throughout Defendant's home. They showed that the home was generally in a state of disrepair and uncleanliness. The Government also introduced a phone call Defendant made from jail

in which she made threatening statements about her daughter. Finally, the Government sought the admission of Defendant's prior crimes. The Court allowed the admission of six felonies and one misdemeanor, including two counts for the sale of marijuana, one count of possession of cocaine, one count for the possession of marijuana—the misdemeanor, two counts for the sale of marijuana within 1000 feet of public housing, and one count for the use of a communication facility during the commission of a crime.

Prior to jury deliberations, Defendant's counsel requested three additional jury instructions. The first stated

> [t]he testimony of Larron Bruce is not to be taken as that of an ordinary witness of good character. On the contrary, his testimony should be received by you with suspicion and with the very greatest care and caution.

The second stated

> I charge you that you should not put too much reliance on the testimony of Larron Bruce and that you should give little credence to his testimony unless there is corroborating testimony.

The third stated

> I charge you that you should not convict Defendant on the unsupported testimony of Larron Bruce, unless you believe Larron Bruce's testimony beyond a reasonable doubt.

The Court declined to issue these instructions.

A jury convicted Defendant on all three counts. On June 6, 2016, Defendant filed a motion for a new trial. (Doc. 114.) First, Defendant argues that the jail phone call played at trial

4

was unduly prejudicial and that the Court erred in failing to allow the introduction of other explanatory phone calls. (Doc. 114 at 1.) Second, Defendant argues that the Court erred in admitting the evidence of Defendant's prior crimes because their probative value was substantially outweighed by undue prejudice. (Doc. 114 at 6.) Third, Defendant argues that the Court erred in admitting evidence of photographs that showed her house in disarray, but did not show any evidence of drugs or drug paraphernalia. (Doc. 114 at 10.) Finally, Defendant argues that the Court erred in failing to include the three requested jury charges. (Doc. 114 at 11.)

**ANALYSIS**

The Court may grant a defendant's motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Where a defendant moves for a new trial based on improperly admitted evidence, the defendant must show that an objection was properly preserved, the court abused its discretion in admitting or rejecting the evidence, and the error was prejudicial to the defendant. United States v. Stephens, 365 F.3d 967, 974 (11th Cir. 2004). Motions for new trials based on other trial errors must demonstrate that the error created circumstances that rendered the trial prejudicially unfair. See United States v. Prunick, 273 F. App'x 807, 808 (11th Cir. 2008) (affirming decision to grant new trial where joinder of

5

pornography counts with other charges resulted in prejudicially unfair trial); United States v. Martinez, 763 F.2d 1297, 1315 (11th Cir. 1985) (rejecting defendant's motion for new trial based on discovery violation because violation did not render trial "fundamentally unfair").

I.   JAIL PHONE CALLS

Defendant makes two arguments why the Government should not have been able to introduce a recording of a phone call Defendant made while in jail. First, Defendant argues that the tape was unduly prejudicial. (Doc. 114 at 1.) Second, Defendant argues that the rule of completeness required the admission of a number of other phone calls. Defendant alleges that she made these other calls while in jail and that these other calls provide context for the one introduced at trial. (Id. at 4.)

Both of Defendant's arguments must fail. As an initial matter, Defendant's counsel failed to raise an objection at trial to the introduction of the jail tape. See United States v. Khoury, 901 F.2d 948, 966 (11th Cir. 1990) ("A defendant must object at trial to preserve an objection on appeal; the overruling of a motion in limine does not suffice.") (citing United States v. Rutkowski, 814 F.2d 594, 598 (11th Cir. 1987)). Because there was no objection raised at trial to the admission of the phone call, it was not properly preserved. Accordingly, it is not properly before the Court as a basis for a new trial.

Moreover, even if Defendant's counsel had objected, the request would be denied. The Court cannot discern an error in refusing the admittance of the additional calls Plaintiff desires on the basis of Rule 106. Rule 106 states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The rule "permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced." United States v. Simms, 385 F.3d 1347, 1359 (11th Cir. 2004) (quoting United States v. Pendas-Martinez, 845 F.2d 938, 944 (11th Cir. 1988)). The phone call introduced by the Government at trial was played in its entirety and there were no unclear portions requiring explanation or context. While some statements Defendant made on additional calls may provide further self-serving testimony, they are not necessary to explain or place in context the portions of the phone calls the Government played. See United States v. Eady, 591 F. App'x 711, 716 (11th Cir. 2014) (holding that rule 106 "permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced").

7

Likewise, the Court also cannot conclude that the admittance of the phone call was so prejudicial as to warrant a new trial. In this Circuit, "a new trial is warranted only where the error has caused substantial prejudice to the affected party." Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004). In addition to the phone call, Defendant was presented with the testimony of her daughter, the testimony of her co-defendant, and the drug evidence found in her home and in her car. The testimony of all of these witnesses corroborated the Government's claim that Defendant had engaged in drug related conduct on the night of her arrest. Moreover, the phone call was relevant to the testimony of Defendant's daughter and provided context for her statements. Given the weight of the evidence against Defendant, there is no basis to hold that she suffered substantial prejudice from the admittance of a phone call in which she threatened her daughter. Accordingly, Defendant's Motion for New Trial on this ground is **DENIED**.

II. DEFENDANT'S PRIOR CRIMES

The Court previously addressed whether the Government could introduce evidence of Defendant's prior crimes pursuant to Federal Rule of Evidence 404. Generally, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid.

404(b). However, such evidence is admissible when introduced "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id. Rule 404(b) evidence must "(1) be relevant to an issue other than the defendant's character; (2) be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) be of probative value that is not substantially outweighed by undue prejudice and meet the other requirements under Fed. R. Evid. 403." United States v. Patrick, 536 F. App'x 840, 842 (11th Cir. 2013) (citing United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003)).

The determination of whether the probative value of Defendant's prior crimes is substantially outweighed by undue prejudice requires a "common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." United States v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997) (citations omitted). In this case, the probative value of Defendant's prior convictions was not substantially outweighed by undue prejudice. The Government offered evidence of Defendant's prior crimes to show knowledge and intent. While some of Defendant's previous convictions are for marijuana

rather than cocaine, prior drug related convictions were relevant to this case. See United States v. Lampley, 68 F.3d 1296, 1300 (11th Cir. 1995) (marijuana convictions admissible in cocaine deal despite "differing nature and remoteness in time"); United States v. Delgado, 56 F.3d 1357, 1366 (11th Cir. 1995) ("[W]hen other crimes evidence goes to intent rather than identity a lesser degree of similarity between the charged crime and the uncharged crime is required."). Defendant's argument that there was no prosecutorial need in this case is likewise unavailing. The fact that the Government can introduce evidence of Defendant's knowledge or intent through Defendant's co-conspirators does not preclude the Government from introducing additional evidence of prior crimes at trial. See Calderon, 127 F.3d at 1332 (allowing government to introduce prior crimes evidence because case rested on testimony of coconspirator witnesses whose credibility was questionable).

Finally, Defendant argues, yet again, that the prior convictions are too remote in time to be probative. There is no "bright-line rule regarding temporal remoteness." Patrick, 536 F. App'x at 843 (citing United States v. Matthews, 431 F.3d 1296, 1311 (11th Cir. 2005)). In this case, the amount of time between Defendant's convictions for her prior crimes and those at issue in this case is less than ten years. This time period does not militate against the evidence's probative value

10

considering the similarity of the prior crimes and the instant offenses. Accordingly, Defendant's Motion for New Trial on this ground is **DENIED**.

III. PHOTOGRAPHS OF THE HOME

Defendant argues next that the Court erred in admitting eight photographs that showed bedrooms in her home. (Doc. 114 at 10.) Defendant argues that the photographs were unfairly prejudicial because they showed the rooms in a state of uncleanliness, but did not provide evidence of drugs. (Id.) The photographs were offered by the Government for two purposes. First, that police at the scene conducted a sweep of the entire home. (Doc. 115 at 6.) Second, that the Defendant allowed the manufacture and sale of drugs in her home. (Id.) In this regard, the photos provided a layout of the home and provided context for witness testimony. This was useful to the jury when considering testimony as to where drugs were found, where witnesses were standing, and what those witnesses were able to see and hear from their various locations inside the home. While the photographs showed the bedrooms in a state of uncleanliness, the Court is unpersuaded that the probative value of the photographs was outweighed by the danger of unfair prejudice. See United States v. Blasingame, 219 F. App'x 934, 945-46 (11th Cir. 2007) (declining to reverse district court where photograph of gunshot scar and numerous tattoos were admitted against

defendant charged with conspiracy to commit armed robbery). Accordingly, Defendant's Motion for New Trial on this ground is **DENIED**.

IV. <u>JURY INSTRUCTIONS</u>

Finally, Defendant argues that the Court erred in failing to offer three jury instructions proffered by Defendant. (Doc. 114 at 11.) A trial court's refusal to give a jury instruction is only reversible error if "(1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself." <u>United States v. Paradies</u>, 98 F.3d 1266, 1286 (11th Cir. 1996) (<u>citing</u> <u>United States v. Sirang</u>, 70 F.3d 588, 593 (11th Cir. 1995)).

The three instructions requested by Defendant generally require that the jury be wary of Mr. Bruce's testimony because he was a co-defendant and had entered into a plea deal with the Government. However, these instructions were superfluous as the Court provided the proper warnings to the jury pursuant to the Eleventh Circuit Pattern Jury Instructions. The Court noted that a testifying witness had made a plea agreement with the Government in exchange for his testimony. Next, the Court stated that "while a witness of that kind may be entirely truthful when

12

testifying, you should consider that testimony with more caution than the testimony of other witnesses." As a result, there was no need to provide Defendant's additional instructions because suitable warnings were issued. See United States v. Roberts, 464 F. App'x 796, 799 (11th Cir. 2012) (denying new trial where proposed jury instructions were cumulative). Accordingly, Defendant's Motion for New Trial on this ground is **DENIED**.

## CONCLUSION

Before the Court is Defendant's Motion for New Trial. (Doc. 114.) For the foregoing reasons, Defendant's motion is **DENIED**.

SO ORDERED this 13th day of July 2016.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA